IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHAWN AUNDRE EASTER                                                    PLAINTIFF

vs.                          Civil No. 6:17-cv-06002

NANCY A. BERRYHILL                                             DEFENDANT
Acting Commissioner, Social Security Administration

## **MEMORANDUM OPINION**

Shawn Aundre Easter ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Act.

The Parties have consented to the jurisdiction of a Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 8.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**      **Background:**

Plaintiff protectively filed his disability application on September 12, 2011. (Tr. 83-90). Plaintiff alleges being disabled due to a sleeping disorder, fractured knee, torn anterior cruciate ligament, left hand carpal tunnel syndrome, heart problems, breathing problems, hypertension, and decreased left eye vision. (Tr. 22-39, 114, 132). Plaintiff alleges an onset date of August 31, 2011. (Tr. 83). This application was denied initially and again upon reconsideration. (Tr. 40-42, 45-48,

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "Tr."

52-54).

Thereafter, Plaintiff requested an administrative hearing on his denied application. The administrative law judge ("ALJ") granted that request and held an administrative video hearing on April 23, 2013. (Tr. 21-39). Following the administrative hearing, the ALJ entered an unfavorable decision. (Tr. 10-17). Upon appeal to this Court, the matter was remanded to the Commissioner for further consideration of Plaintiff's residual functional capacity ("RFC"). (Tr. 290-295). On May 26, 2016, the ALJ held a supplemental administrative hearing in El Dorado, Arkansas. (Tr. 247-269). At the hearing, Plaintiff testified and was represented by Hans Pullen. *Id.* A medical expert, Dr. Kweli J. Amusa, M.D., testified at this hearing, and a vocational expert, Dr. Thomas E. Bott, Ph.D., also testified. *Id.*

On June 23, 2016, the ALJ entered an unfavorable decision denying Plaintiff's application for SSI. (Tr. 235-240). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 12, 2011, the application date. (Tr. 237, Finding 1). The ALJ determined Plaintiff had the following severe impairments: status post right anterior cruciate ligament ("ACL") tear and meniscus tear; and status post ACL reconstruction. (Tr. 237, Finding 2). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"), and specifically Listing 1.02. (Tr. 237, Finding 3).

The ALJ then considered Plaintiff's RFC. (Tr. 237-240, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 416.967(b).

*Id.*

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW") and with the assistance of the vocational expert testimony, the ALJ found Plaintiff is capable of performing past relevant work as a barber. (Tr. 240, Finding 5). The ALJ also determined Plaintiff has not been under a disability, as defined by the Act, since September 12, 2011, the date the application was filed. (Tr. 240, Finding 6).

Thereafter, Plaintiff submitted exceptions to the ALJ's decision to the Appeals Council on July 13, 2016. (Tr. 227-231). On December 14, 2016, the Appeals Council denied this request finding no reason under the rules to assume jurisdiction. (Tr. 222-224). On January 5, 2017, Plaintiff filed the present appeal with this Court. ECF No. 1. The Parties consented to the jurisdiction of this Court on February 21, 2017. ECF No. 8. Both Parties have filed appeal briefs. ECF Nos. 12, 13. This case is now ripe for determination.

**2.      Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have

3

supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)©. A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to

4

the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 416.920(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. § 416.920 (2003).

**3.    Discussion:**

In his appeal brief, Plaintiff claims the following: (A) the ALJ erred in finding him not disabled under Listing 1.03[2]; and (B) the ALJ's RFC determination was not supported by substantial evidence. ECF No. 12 at 1-17. Upon review, the Court agrees the ALJ's RFC determination was not supported by substantial evidence. Accordingly, the Court will only address the second argument Plaintiff raised.

This matter was previously remanded for further consideration of the Plaintiff's RFC. The Court was concerned that the ALJ disregarded the findings of consultative specialist, Dr. Bernard Crowell, M.D., who examined Plaintiff in favor of the findings of the state agency medical consultants, which are non-examining physicians, and no other medical evidence was provided that qualified as substantial evidence to support the ALJ's RFC. (Tr. 295).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians

---

[2]Plaintiff alleges he met Listing 1.03, however, the ALJ specifically considered Listing 1.02 in his decision. Nevertheless, the ALJ considered all of the listed impairments and found Plaintiff did not meet or equal any listed impairment for the period he alleged he was disabled. (Tr. 237).

5

and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

A review of the recent medical evidence reveals that Plaintiff had chronic right knee pain after the August 30, 2011 surgical procedures. On July 30, 2014, a right knee X-ray showed an easy lock implant, stable mild degenerative joint disease, and a possible meniscus tear. (Tr. 417-420). Dr. Gordon Troy Birk, M.D., an orthopedic surgeon, discussed treatment options with the Plaintiff. *Id*.

Plaintiff returned to see Dr. C. Dwayne Daniels, M.D., the orthopedic surgeon that performed the 2011 procedures, for treatment. On July 23, 2015, Plaintiff reported he fell while raking leaves and landed on his knee. (Tr. 430-432). Dr. Daniels provided Plaintiff with pain medication and a hinged knee brace to assist with comfort while working as a barber. *Id*. On October 12, 2015, Plaintiff was diagnosed with right knee effusion, and Dr. Daniels administered a Depo-Medrol and Xylocaine injection and again provided pain medication. (Tr. 427-429).

On October 12, 2015, Plaintiff presented to Ms. Janice Suit, A.R.P.N., Dr. Birk's nurse, and she diagnosed Plaintiff with right knee pain and a current tear of medial cartilage and or meniscus

of the knee. (Tr. 414-417). Ms. Suit opined that a knee arthroscopy and a possible ACL repair was needed, and Dr. Birk agreed with her assessment. *Id.*

On January 18, 2016, Plaintiff returned to Dr. Daniels, and he added a Medrol Dosepak to the Plaintiff's treatment regimen, and second Medrol Dosepak was provided on March 7, 2016. (Tr. 444, 446-447). On April 11, 2016, Plaintiff reported falling again, he had slight anterior drawer sign on exam, and Dr. Daniels determined a right knee MRI study was necessary. (Tr. 445).

On April 25, 2016, the MRI study of Plaintiff's right knee showed the following: intact ACL graft without complications of the femoral or tibial tunnel; absent posterior horn of the lateral meniscus likely secondary to prior partial meniscectomy; near full-thickness horizontal fissure of the central weight-bearing medial femoral cartilage resulting in a small cartilage flap; and partial-thickness cartilage loss of the posterior femoral and tibial cartilage of the lateral compartment. (Tr. 442-443).

At a supplemental hearing was held on May 26, 2016, Plaintiff testified that he can stand for 15-20 minutes before having to take a break. (Tr. 257). Plaintiff reported he works three hours a day in his barbershop, but he elevates his feet on a bar stool and takes breaks for 15-20 minutes at a time. (Tr. 255-256). Plaintiff also testified he may have surgery on June 29, 2016 to shave down the cartilage and bone of his right knee. (Tr. 251).

Dr. Amusa, a medical expert, also provided testimony after reviewing the Plaintiff's records. An ALJ has the discretion to obtain a medical expert opinion when the ALJ is determining the claimant's RFC, for example, by asking the medical expert to explain or clarify the claimants functional limitations and abilities as established by the medical evidence of record.. *See Hearings,*

*Appeals, and Litigation Law Manual* ("HALLEX") 1-2-5-34. Dr. Amusa testified Plaintiff's work as a barber required extensive standing. (Tr. 254). Dr. Amusa found starting in July 2014, it was reasonable to reduce or limit Plaintiff to doing work that required less standing. *Id*. Additionally, Dr. Amusa found the following: Plaintiff could stand four hours in an eight-hour day instead of six hours; lifting and carrying would be at the light level; he should never climb ladders, ropes, or scaffolds; all other postural functions would be occasional; and he should avoid uneven terrain. *Id*.

At the hearing, the ALJ also posed the following questions to Dr. Bott, the vocational expert:

> #1. Assume a hypothetical individual who has the RFC to perform light work except he has to alternate sitting four hours and standing four hours, can he return to PRW as a barber?
>
> No. He would not be able to do that.
>
> #2. Are there jobs in the national economy he could perform? Yes: The closest job matches to the occupation of barber in terms of skill transferability are the following: manicurist, sedentary, low level semi-skilled, sedentary, 41,459 nationwide, and 79 in Arkansas; and fingernail former, semi-skilled, sedentary, 33,593 nationwide, and 64 in Arkansas. He could also work as a check cashier, sedentary, semi-skilled, 439,021 nationwide, and 1,500 in Arkansas; and phone solicitor, sedentary, semi-skilled, 159, 897 nationwide, and it does not look like they have any data for Arkansas.

(Tr. 264-266).

The medical evidence shows Plaintiff's right knee pain required additional treatment such as injections, medications, and a knee brace after surgery. There is a possibility that Plaintiff might require additional surgery based on the records provided by Dr. Birk. Although Plaintiff currently works part time as a barber, he testified it is only for three hours a day with multiple breaks to elevate his feet. (Tr. 255-256). Despite this evidence, the ALJ determined Plaintiff retained the RFC to perform the full range of light work, which includes standing and/or walking with normal breaks for

8

a total of six hours in an eight-hour workday. (Tr. 237).

In making his RFC determination, the ALJ found Dr. Crowell's consultative opinion was somewhat consistent with the record as a whole. (Tr. 239). However, the ALJ decided to assign only partial weight to Dr. Crowell's assessment because the ALJ found the limitation of standing and/or walking for one hour per day was not consistent with the entirety of the record and Plaintiff's testimony. *Id*. In his decision, the ALJ discounted the opinion of the only physician that examined the Plaintiff. The ALJ also assigned significant weight to the opinions of non-examining state agency medical consultants, Drs. Petty and Crow, that found Plaintiff was capable of performing light work with postural limitations. (Tr. 239-240). Notably, the medical expert, Dr. Amusa, testified Plaintiff could stand four hours in an eight-hour day instead of six hours. (Tr. 254). However, the ALJ did not even evaluate Dr. Amusa's testimony in his decision.

The ALJ did attempt to discredit the Plaintiff's subjective complaints based on his failure to seek regular medical treatment from his primary care physician and Plaintiff's daily activities. The Court, however, does not find these reasons are significant enough to undermine the evidence contained in the record. Accordingly, because the evidence does not make clear that Plaintiff can stand for the requisite time period to perform the full range of light work, the Court finds that this matter must be remanded a second time for further consideration of the Plaintiff's RFC.

On remand, the ALJ is instructed to contact Drs. Daniels and Birk, Plaintiff's treating orthopedic surgeons, to seek detailed assessments in narrative format. The assessments should specifically address how long Plaintiff can stand and walk during an eight-hour workday; including the number and length of breaks needed; and what other exertional and postural limitations Plaintiff

might have due to his right knee impairment. Drs. Daniels and Birk's assessments should also provide insight as to whether they recommend additional surgery, and what results could be expected. The ALJ is also directed to reconsider the remaining opinion evidence in the record. With this evidence, the ALJ should then reconsider Plaintiff's RFC.

**4.      Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 21st day of March 2018.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE